# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Virginia-Carolina Rubber Co., Inc. v. M. Flanagan.

### March 22, 1928.

#### Absent, Burks and Campbell, JJ.

1. Stock and Stockholders—*Subscriptions to Stock—Misrepresentations and False Statements of Agents—Action of Deceit against Corporation—Declaration Failing to Allege an Offer to Return Certificate of Stock—Case at Bar.*—The instant case was an action against a corporation by a subscriber to its stock for damages growing out of alleged misrepresentations and false statements, made by agents of defendant, which induced plaintiff to subscribe to the stock of defendant. Defendant demurred to the declaration, and the court overruled the demurrer. The declaration was in the form of an action of trespass on the case. The action was what is commonly known as an action of deceit. The declaration set forth the subscription to the stock, together with a statement of the alleged misrepresentations by the agents by which plaintiff was induced to make the subscription. The declaration alleged that a certificate of stock was issued to the plaintiff, but no offer was made to return this stock to the defendant.

   *Held:* That plaintiff had mistaken his remedy and that the demurrer should have been sustained and the action dismissed.

2. Stock and Stockholders—*Subscriptions to Stock—Misrepresentations and False Statements of Agents—Action of Deceit against Corporation—Declaration Failing to Allege an Offer to Return Certificate of Stock—Case at Bar.*—The instant case was an action of deceit against a corporation by a subscriber to the stock of the corporation, who alleged that he was induced to subscribe by the alleged misrepresentations of the agents of the corporation. The declaration alleged that a certificate of stock was issued to the plaintiff, but no offer was made to return this certificate to the defendant. It was contended by defendant that this action implied an affirmance of the subscription contract, and that while plaintiff retained his stock he was seeking to recover damages for having been induced to purchase it by false representations of the defendant, and it was further contended that plaintiff's remedy was not an action for damages against the

company, but either a suit in equity against the corporation for a rescission of the subscription contract, and a recovery back of the consideration paid, or an action of deceit against the agents of the company personally who made the fraudulent misrepresentations.

*Held:* That defendant's contention was sound and that plaintiff had mistaken his remedy.

3. STOCK AND STOCKHOLDERS—*Subscriptions to Stock—Trilateral Contract— Action by Stockholder Retaining His Stock against Corporation for Damages Based upon False Representations of the Agents of the Corporation.*—In some jurisdictions a subscription to the stock of a corporation is regarded as a trilateral contract; as an undertaking not only with the corporation, but with all the other subscribers to the stock. This being true it would be unfair to the other stockholders to permit one stockholder to retain his stock and recover against the corporation damages based upon the false representations of agents of the corporation.

4. CONTRACTS—*Fraud and Deceit—Election to Rescind Contract and Recover Back Consideration—Action for Damages—Application of Rule to Shares of Corporation.*—A person who has been induced by fraud to enter into a contract, may, upon the discovery of the fraud, elect to rescind the contract and recover back the consideration he has paid or given, if he is able to restore in an unchanged state what he has received; or he may elect to retain what he has received and bring an action to recover any damages he has sustained by reason of the fraud. This is undoubtedly the rule with respect to contracts that pertain to goods and chattels, but it does not apply to a person who is induced by the fraudulent misrepresentations of an agent of a corporation to subscribe to shares in the corporation. Such person, after he discovers the fraud, cannot elect to retain the shares and sue the company for damages.

Error to a judgment of the Circuit Court of the city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Parrish, Butcher, Churchman & Coulbourn,* for the plaintiff in error.

*J. Henry Beazley*, for the defendant in error.

Chichester, J., delivered the opinion of the court.

M. Flanagan, hereinafter referred to as plaintiff, brought action against the Virginia-Carolina Rubber Company, Incorporated, hereinafter referred to as defendant, for damages growing out of alleged misrepresentations and false statements, made by certain agents of the defendant, which induced plaintiff to subscribe to and purchase 300 shares of its common stock at $10.00 per share and ten shares of the preferred stock at $100.00 per share.

The defendant demurred to the declaration, and the court overruled the demurrer. Upon trial of the case upon a plea of the general issue, and the various grounds of defense filed in writing, the jury, on December 3, 1926, found a verdict for the plaintiff in the sum of $3,000.00 with interest thereon at the rate of six per cent from May 14, 1926, until paid. Upon this verdict the court rendered judgment.

There are three assignments of error. The first, and the only assignment which it is necessary to consider is: The action of the trial court in overruling the demurrer to the declaration.

The declaration is in the form of an action of trespass on the case. It is a tort action based on the alleged fraudulent misrepresentations of the defendant's agents, which misrepresentations induced the plaintiff to purchase the stock of the defendant corporation. The action is what is commonly known as an action of deceit and is against the corporation and not against the agents of the corporation who are charged with making the misrepresentations.

Each of the three counts of the declaration sets forth a separate subscription to stock, together with a statement of the alleged misrepresentations by which the plaintiff was induced to make it and each count concludes with a claim for damages in the amount of the purchase price of the stock plus interest from the date of the subscription. The declaration also alleges that a certificate of stock was issued to the plaintiff, but no offer is made to return this certificate to defendant.

Under such circumstances it is contended by the defendant that the action brought implies an affirmance of the subscription contract, and while the plaintiff retains his stock he seeks to recover damages for having been induced to purchase it by false representations of the agents of the defendant, and it is further contended, under such circumstances, that plaintiff's remedy was not by action for damages against the company, but either a suit in equity against the corporation for a rescission of the subscription contract, and a recovery back of the consideration paid, or, an action of deceit against the agents of the company personally who made the fraudulent misrepresentations.

[1, 2] We think the plaintiff has mistaken his remedy and that the demurrer should have been sustained and the action dismissed.

[3] We cannot apply the rule as to remedies in the case of an ordinary bilateral contract to a stock subscription contract. In 14 C. J. at page 508, this is said: "In some jurisdictions a subscription to the stock of a corporation is regarded as a trilateral contract; as an undertaking not only with the corporation, but with all the other subscribers to the stock * *" This being true it would be unfair to the other stockholders to permit one stockholder to retain his stock and recover against the corporation damages based upon

the false representations of agents of the corporation. This principle forms the basis of the decisions which uphold the contention of defendant in the instant case. Thus in *Wilson* v. *Hundley*, 96 Va. 96, 30 S. E. 492, 70 Am. St. Rep. 837, Judge Riely, speaking for the court, said: "The defendant having, by affirmance of his contract of subscription, precluded himself from thereafter rescinding or repudiating it, the next inquiry is whether he could maintain his cross-action against the company for damages for the deceit.

[4] "A person who has been induced by fraud to enter into a contract, may, upon the discovery of the fraud, as we have seen, elect to rescind the contract and recover back the consideration he has paid or given, if he is able to restore in an unchanged state what he has received; or he may elect to retain what he has received and bring an action to recover any damages he has sustained by reason of the fraud. This is undoubtedly the rule with respect to contracts that pertain to goods and chattels, but it has been laid down as the law by the tribunal of last resort in England, the House of Lords, that a person who has been induced by the fraudulent misrepresentations of an agent of a company to take shares in it, cannot, after he discovers the fraud, elect to retain the shares and sue the company for damages.

"In *Houldsworth* v. *City of Glasgow Bank*, 5 Appeal Cases, 317, the distinction between contracts relating to goods and chattels and contracts of subscription to shares of stock was distinctly pointed out, and it was there decided, as was foreshadowed in the previous case of *Addie* v. *Western Bank of Scotland*, L. R./Sc. App. 146, that a shareholder, who has been induced to purchase his shares by the fraud of an agent of the company, cannot maintain an action against the com-

pany for damages for the deceit, so long as he is a member of the company, upon the ground that such an action is at variance with the contract entered into by him with his fellow shareholders or partners in becoming a member of the company. The same principle was followed in *In re Addlestone Linoleum Co.*, 37 Ch. Div. 191.

"The effect of these decisions is that if the shareholder is debarred from a rescission of his contract by the insolvency of the company, or from any other cause, he is without remedy against the company, and is left to his action against the agent who induced him by the fraudulent representation to subscribe for the stock. Benjamin on Sales (6 Am. Ed.), section 507-9; Taylor on Corporations, section 523; and 1 Cook on Stockholders, section 159, note.

"A subscription to the capital stock of a joint stock company is not only an undertaking to the company, but with all other subscribers. It is of the essence of the contract between the shareholders that they shall all contribute ratably to the payment of the company's debts and liabilities. The amount which each pays, or agrees to pay, for his stock is, by his contract of membership, dedicated to that end. If a subscriber, who has been induced by fraud to purchase his shares, elects after the discovery of the fraud to affirm his contract of subscription, he thereby, in effect, says: 'Notwithstanding the fraud by which I was induced to become a member of the company, I shall still stand in with it, and take my chances.' If he could thereafter maintain an action against the company for damages for the fraud, which, if right in principle, might go to the extent of allowing him to recover back by way of damages all that he had paid in on account of his shares, he would thereby recoup his entire loss; and,

notwithstanding his election to retain his shares and to continue a member of the company, he would contribute, in fact, not one cent to the payment of the debts and liabilities. The effect, therefore, of allowing an action to be maintained by a shareholder against the company for fraud would be to throw the burden of the payment of the debts and liabilities on the other shareholders, who are as innocent of the fraud as he—a result which would be wholly at variance with his contract of membership.

"The defendant in error, in consequence of having elected to remain a member of the company, could not thereafter maintain an action against it to recover damages for the alleged fraud."

In Elliott on Contracts, Volumn 3, page 586, this is said: "Where fraud is exercised in obtaining a contract of subscription for shares of stock, the proper remedy for the defrauded party is equitable rescission, since damages in an action of deceit would not be an adequate remedy, for the reason that the plaintiff would still be a stockholder, and subject as such to certain liabilities imposed by law."

There are no authorities cited by plaintiff's counsel, certainly in Virginia, which run counter to the principles above enunciated. They all involve actions of deceit by one individual against another.

We are of opinion, therefore, that the court erred in not sustaining the demurrer and dismissing the action, and this court will proceed now to enter such order with reference to the demurrer as in its judgment the trial court should have entered.

*Reversed.*